# JUNE TERM, 1905.*

---

ROBINSON *v* WARD.

1. APPEAL AND ERROR—QUESTIONS CONSIDERED—DIRECTED VERDICT.

Where a verdict is directed for defendant after all the evidence is in, the question on error is whether, considering all the evidence in plaintiff's favor as true, and giving it the most -favorable construction, it fails to make a prima facie case.

2. SALES—SCALE OF LOGS—CONCLUSIVENESS.

Where logs were sold for a certain price per foot, the number of feet to be ascertained by a joint scale, the parties were not bound by a scale afterwards made by their agents if it was erroneous either because of fraud or gross mistake.

Error to Crawford; Sharpe, J. Submitted April 13, 1905. (Docket No. 67.) Decided July 21, 1905.

Assumpsit by Samuel A. Robinson against Frank Ward and Fred Ward, copartners as Ward Bros., for goods sold and delivered. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Reversed.

*Ward B. Connine* (*Main J. Connine*, of counsel), for appellant.

*James E. Duffy*, for appellees.

McALVAY, J. Plaintiff, a lumberman of Crawford county, sold defendants certain maple logs skidded in his millyard near Frederic. Defendants do business at Bay City in buying logs and manufacturing lumber. One

---

Trombly, acting for defendants, examined the logs in plaintiff's millyard, and plaintiff agreed to sell defendants such logs as Trombly should select at $7 per thousand, payable $6 per thousand as soon as the scale was reported to defendants, and the balance of one dollar when the logs were loaded on cars. It was agreed that the logs were to be scaled merchantable, rejecting visible defects, sound hearts not to be scaled out. The logs were to be scaled jointly by Trombly and Lewis. They, in the presence of plaintiff, began the joint scale of the logs as selected by Trombly; Lewis marking logs he scaled with a straight mark and Trombly with a letter D. Plaintiff was soon called away from his mill and yard. Trombly had brought with him one of defendants' marking hammers, and plaintiff had one of his men follow the scalers and hammer mark the logs scaled and marked by them. Soon after plaintiff left, Trombly told Lewis that it was too slow work for them to scale together, left him, and went to work scaling in another part of the yard. After they had gone over the logs in the yard, Trombly took the hammer man with him to another lot of logs, and went over them, selecting and marking certain logs. After finishing his scaling, Lewis got their team and drove to where Trombly was, took him in, and started for Frederic. On the road they met plaintiff, and told him they had finished the work, Trombly saying he would send plaintiff a scale of the logs as soon as he figured it up. After arriving at Frederic, Trombly took Lewis' scale book, and added the amounts in it to those in his book, and soon after sent plaintiff a scale of the logs, purporting to show the number of logs scaled and the scale as made by himself and Lewis. This report showed 2,255 logs, scaling 223,210 feet. Of these, 609 logs, scaling 65,260 feet, were scaled by Lewis, and 1,646 logs, scaling 157,950 feet, were scaled by Trombly. A copy of this scale report was sent by Trombly to each of the parties. From this report plaintiff presented his bill for $6 per thousand to defendants, and was paid by their check $1,338. The cars were furnished by de-

fendants and loaded by plaintiff from time to time from May to July, 1901. The logs were scaled and counted by plaintiff as they were being loaded on the cars, and with each shipment a statement was mailed to defendants, describing each car, and giving the number of logs and the number of feet on each car according to his scale. Plaintiff claims that all the logs shipped were those marked by Lewis or Trombly, except a very few instances, where he substituted a good sound log for a broken, cull, or basswood log. Plaintiff shipped 2,112 logs, amounting to 227,524 feet, according to his scale. This exceeds the scale according to Trombly's report by 4,314 feet, and there yet remained in his yard 500 to 600 logs marked with Lewis and Trombly marks. All the logs selected and marked by Lewis were hammer-marked, but not all those selected and marked by Trombly. Plaintiff did not know until after the logs were all shipped that Lewis and Trombly did not make a joint scale. Shipment of logs was stopped on account of the excess of the marked logs and the excess of plaintiff's scale. On being notified, Fred Ward, one of the defendants, came to the plaintiff's place. He claimed all the logs with their mark on. He wanted all the logs Trombly had scaled. Plaintiff refused to let him have them. Plaintiff afterwards manufactured the balance of the marked logs. Plaintiff sued defendants in assumpsit on all the common counts, and on demand furnished a bill of particulars, claiming $254.67, the balance due on logs delivered according to his scale, and $26.71 as interest thereon. The plea was the general issue, with notice that the logs were purchased by defendants under a special agreement, being a certain number at a certain price, which agreement had not been fulfilled by plaintiff, and damages were claimed because only part of the logs purchased were delivered; that many poorer logs were substituted; and that they were not delivered at the time agreed upon. After proofs on both sides were all submitted, the court directed a verdict in favor of defendants.

Whether or not the court was correct in taking the case

from the jury is the principal question before us. The question cannot be determined upon the strength of plaintiff's case, but upon the fact whether, after considering all the testimony in the case making in favor of the plaintiff as true, and giving the most favorable construction possible to such testimony, it fails to make a prima facie case.

There is no question in this case but that a certain number and amount of logs were purchased by defendants from the plaintiff for a certain price, to be delivered and paid for in a certain manner. Plaintiff claims that the logs were to be scaled by a joint scale to be made by the representatives of each party, and offered proof tending to show this fact, and also that no such joint scale was made; that 500 to 600 more logs were marked than the number stated in the scale report, and that a less number of logs delivered by plaintiff actually contained a greater number of feet than the scale called ·for; that he never knew that the scale was not made as agreed until after the logs were delivered. He sued in assumpsit upon the common counts to recover the balance due him. Defendants deny that they have received the logs purchased, either in number or amount, and claim that logs of poorer quality were substituted. It was the province of the jury, and not the court, to determine these disputed facts. The court erred in taking the case from the jury.

The court was in error in his conclusion of law from the evidence that plaintiff was bound by the scale made, because no fraud was shown. It was for the jury to determine the dispute relative to the scale and marking of the logs. These scalers, either or both of them, by fraud or gross mistake could not defeat either one of these parties of their rights and property, nor would either party be bound by such a scale. Such conduct is always open to investigation, and any competent proof of any scale made of these logs, or the lumber manufactured from them; was material, which tended to show the amount actually delivered to and received by defendants. It is not necessary to consider the other assignments of error.

The judgment of the circuit court is reversed, and a new trial ordered.

MOORE, C. J., and CARPENTER, MONTGOMERY, and OSTRANDER, JJ., concurred.